Vacated by Supreme Court, January 24, 2005

**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

MARK KEVIN MAYES,
*Defendant-Appellant.*

No. 03-4672

Appeal from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CR-02-110)

Argued: May 7, 2004

Decided: July 12, 2004

Before WILKINSON, LUTTIG, and SHEDD, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Terry N. Grimes, Roanoke, Virginia, for Appellant. Anthony Paul Giorno, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

A jury convicted Mark Kevin Mayes of possession of a firearm by a convicted felon (18 U.S.C. § 922(g)(1)), possession with intent to distribute methamphetamine (21 U.S.C. § 841), and possession of a firearm in furtherance of a drug trafficking crime (18 U.S.C. § 924(c)(1)). The district court sentenced Mayes to a term of 220 months of imprisonment (plus eight years of supervised release). Mayes now appeals his conviction and sentence. We affirm.

I

On September 4, 2002, at 2:55 a.m., officers of the Patrick County, Virginia, Sheriff's Office executed a warrant to search the residence of Joel Hamm ("Joel") for drugs (specifically methamphetamine) and drug paraphernalia. The warrant authorized the officers to search all persons, vehicles, outbuildings and curtilage of the residence. The residence is located in a rural area of Patrick County and is at the end of an improved private gravel driveway that runs approximately 150 yards off the public road. An unimproved "field road" veers off the driveway approximately 35 yards from Joel's residence. Although the officers who executed the search warrant were not aware of any other residences that could be accessed from the driveway, Mayes was then living on the property in a camper that was several hundred yards down the field road. There was no electricity or water service to the area where the camper was located, and the camper had only been on the property for a short time prior to September 4.

Joel was not home when the officers began the search. Because the officers had information that Joel would have drugs on him, and to ensure their own safety, Sheriff David Hubbard instructed Deputy Rick Rorrer to stay outside and stop any vehicles that came up the driveway. Law enforcement vehicles were "stacked up several deep" in the driveway while the search was conducted.

At approximately 3:25 a.m., while the search was ongoing, Mayes was a passenger in a pickup truck that was traveling up the driveway in the direction of Joel's trailer. The truck was being driven by Joel's brother, Allen Hamm ("Allen"). Mayes was intoxicated, and Allen was taking him to his camper.

Upon seeing the truck, Deputy Rorrer ran toward it with his flashlight turned on and yelled for the driver to stop. Investigator Bruce Pendleton, who was outside the trailer, followed behind Deputy Rorrer. The truck did not immediately stop but, instead, turned down the field road and stopped just past the point where the field road veered off the driveway. As the truck stopped, Deputy Rorrer saw Mayes appear to reach for something on the seat next to him and was concerned that he was reaching for a weapon or attempting to conceal or destroy contraband. Deputy Rorrer ordered Mayes to show his hands and open the passenger door, which was locked. Mayes tried, but was unable, to open the door. Deputy Rorrer went to the driver's side and ordered Allen to exit the truck. Another officer took control of Allen, and a search of him turned up no contraband. Deputy Rorrer entered the truck from the driver's side, reached across Mayes, and unlocked the passenger door. Investigator Pendleton then removed Mayes from the truck and asked for his identity, but Mayes responded in an incoherent manner.

While he was securing Mayes, Inspector Pendleton observed what appeared to be the grip of a revolver on the front seat of the truck, and he alerted the other officers. The suspected revolver was on the passenger side of the center armrest, which was in the down position, and it was next to a Crown Royal bag, which Sheriff Hubbard recognized as being a common container for contraband. At that point, Mayes stated that the gun belonged to him, that he had been fishing that night and used the gun to shoot snakes, and that "everything" in the truck belonged to him. Mayes later commented to Deputy Rorrer that the events of that evening had startled him and that he had almost shot Deputy Rorrer. Because of his intoxication, Mayes has no recollection of any of the events relating to the stop and his subsequent arrest.

The object observed by Investigator Pendleton was found to be a loaded .38 revolver, and the Crown Royal bag contained two plastic bags which combined contained 33.3 grams of methamphetamine.

The officers also found on Mayes a plastic pen tube (which Mayes admitted at trial can be used for ingesting methamphetamine) and $721 cash. There was no fishing gear in the truck.

The officers arrested Mayes, and he was eventually indicted on the methamphetamine and firearm charges. Before trial, Mayes moved to suppress the physical evidence seized during the stop of the truck, arguing that the truck was outside the scope of the search warrant and that the officers lacked probable cause to stop and search the truck.[1] Following an evidentiary hearing, the district court denied the motion based on three alternative rulings: (1) the truck was covered by the search warrant because it was a vehicle on the driveway of Joel's residence, (2) the officers had the right to stop and search the truck because of the suspicious circumstances they observed and because the revolver was in plain view once the truck was stopped, and (3) the officers acted in good faith reliance on the search warrant in searching the truck.[2]

The case proceeded to trial, and the bulk of the government's case was evidence pertaining to the events of September 4. Additionally, the government presented testimony from Sheriff Hubbard and two other law enforcement officers concerning the customs of methamphetamine dealers. Mayes presented brief testimony from several witnesses, including Allen, who stated on cross examination that Mayes owned the revolver. Mayes also testified, and he denied ownership or possession of the revolver and methamphetamine. The jury convicted Mayes on all counts.

Before sentencing, the probation officer recommended in the presentence report (which the district court adopted) that the district court enhance Mayes' sentence under U.S.S.G. § 3C1.1 for obstruction of justice. The probation officer explained that Mayes' trial

---

[1]Mayes also unsuccessfully moved to suppress the statements he made during the course of the stop and arrest, but he does not challenge the district court's ruling admitting his statements on appeal.

[2]In addition to its other arguments, the government also argued that Mayes lacked standing to challenge the search of the truck, but the district court did not rule on that issue.

testimony, in which he denied ownership of the gun and methamphet-amine, was willful, false testimony concerning a material fact. Mayes objected to the enhancement, arguing that he should not be penalized for taking the stand to defend himself by testifying that he is not guilty. The district court overruled the objection and found the enhancement to be warranted. The district court noted that while Mayes had admitted on the night of his arrest that the guns and the methamphetamine were his, he denied ownership of those items during trial. The district court stated that Mayes' right to defend himself by testifying at trial does not include the right "to tell a lie." (J.A. 246).

II

On appeal, Mayes contends that the district court erred by denying his suppression motion, admitting the testimony of Sheriff Hubbard concerning the customs of methamphetamine dealers, and enhancing his sentence for obstruction of justice. Mayes also argues that the evidence is insufficient to support his conviction for possession with intent to distribute methamphetamine.

A.

We first consider Mayes' challenge to the denial of his suppression motion. Relying on the fact that the truck was going to his camper and was stopped near the point where the field road veers off the drive-way, Mayes argues that the search of the truck was not within the cur-tilage of Joel's property and, therefore, exceeded the scope of the search warrant. Mayes then points to the same set of facts to argue that the good-faith exception to the exclusionary rule is inapplicable. On our review of the denial of a suppression motion, we review the district court's legal conclusions de novo and factual findings for clear error, and we view the evidence in the light most favorable to the government. *United States v. Jones*, 356 F.3d 529, 533 (4th Cir.), *cert. denied*, 124 S. Ct. 1694 (2004).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." The temporary detention of an individual during a law enforcement stop of an automobile, even if only for a brief period and for a limited pur-

pose, constitutes a "seizure" within the meaning of the Fourth Amendment, and "[a]n automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). A passenger in a vehicle that is stopped ordinarily lacks standing to challenge a search of the vehicle, but he does have standing to challenge the legality of his own detention and, if the detention is illegal, to seek suppression of items found during the vehicle search. *See United States v. Carter*, 300 F.3d 415, 421 (4th Cir. 2002) ("A passenger in a car normally has no legitimate expectation of privacy in an automobile in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object"); *United States v. Rusher*, 966 F.2d 868, 874 n.4 (4th Cir. 1992) ("Even though the Rushers cannot challenge the search of the truck, they can challenge their own seizures. . . . This means that they have standing to argue that the initial stop of the truck [was] . . . illegal").

We conclude that the district court did not err in denying the suppression motion. The officers were in the midst of executing a search warrant at a suspected drug residence in a remote area during the early hours of the morning, and the resident (*i.e.*, Joel) was not at home. The officers saw the truck approaching the residence on the private driveway that was well off the main road, and the officers were unaware of any other residences that could be accessed from this driveway. The officers were thus presented with a situation in which someone — quite possibly the resident — was coming upon them late at night in a remote area as they attempted to conduct their search. Under these potentially dangerous circumstances, the officers unquestionably had legitimate reasons (*i.e.*, officer safety and identification of the truck's occupants) to stop the truck, and the stop therefore was not unreasonable. *See, e.g., United States v. Bohannon*, 225 F.3d 615 (6th Cir. 2000).[3]

---

[3]In *Bohannon*, the Sixth Circuit extended the rule of *Michigan v. Summers*, 452 U.S. 692 (1981) (officers have a limited authority to detain occupants of a premises while a proper search is being conducted) to a situation that is nearly identical to this case, finding that the policy justifications of *Summers* (particularly officer safety) made it reasonable for officers to stop an individual who approached the scene of an ongoing

Having determined that the stop of the truck was reasonable, it is questionable whether Mayes — the passenger — has standing to challenge the search of the truck. However, even assuming that Mayes does have standing, he has presented no basis for suppression of the evidence. During the execution of the stop, Deputy Rorrer observed the truck make what appeared to him to be an evasive maneuver by turning down the field road, and he also saw Mayes appear to reach for something on the seat. Once the officers stopped the truck, they observed the revolver and the Crown Royal bag (which they associated with contraband) in plain view on the front seat. Under these circumstances, the officers were clearly justified in conducting a protective sweep of the truck, and this sweep produced the contraband. *See United States v. Sakyi*, 160 F.3d 164, 168 (4th Cir. 1998) ("in the context of a lawful automobile stop when the officer is presented with an objectively suspicious and potentially dangerous circumstance, the officer may conduct what amounts to a frisk of an automobile for weapons" (citation and punctuation omitted)).

B.

We next consider Mayes' challenge to the sufficiency of the evidence for his possession with intent to distribute conviction. Mayes argues that the evidence showed at most that although the methamphetamine was found in the truck, he was merely a passenger in the truck and nothing linked him directly to the methamphetamine.

"When considering a sufficiency of the evidence challenge to a guilty verdict, we must sustain the jury's verdict 'if there is substantial evidence, taking the view most favorable to the Government, to support it.' In determining whether the evidence in the record is 'substantial,' we view the evidence in the light most favorable to the Government and inquire whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion

search. 225 F.3d at 616-18; *see also Baker v. Monroe Township*, 50 F.3d 1186, 1192 (3d Cir. 1995) ("Although *Summers* itself only pertains to a resident of the house under warrant, it follows that the police may stop people coming to or going from the house if police need to ascertain whether they live there").

of a defendant's guilt beyond a reasonable doubt." *United States v. Stockton*, 349 F.3d 755, 760-61 (4th Cir. 2003) (citations omitted), *cert. denied*, 124 S. Ct. 1695 (2004). The elements necessary to prove a conviction for possession with intent to distribute methamphetamine are: (1) possession of the methamphetamine; (2) knowledge of this possession; and (3) intention to distribute the methamphetamine. *See United States v. Burgos*, 94 F.3d 849, 873 (4th Cir. 1996) (en banc). Intent to distribute a controlled substance may be inferred from a variety of circumstantial factors, including possession of a quantity larger than needed for personal use, the manner in which the controlled substance is packaged, and possession of a firearm or a large amount of cash. *United States v. Fisher*, 912 F.2d 728, 730-31 (4th Cir. 1990).

The evidence presented at trial established that the officers found on the seat of the truck next to where Mayes had been sitting a quantity of methamphetamine that was inconsistent with personal use, and the methamphetamine was packaged in a manner that is consistent with distribution.[4] Moreover, the officers found next to the methamphetamine a loaded revolver, and they also found a relatively large sum of cash on Mayes. Mayes admitted to the officers that "everything" in the truck was his, and he specifically admitted possession of the revolver (Allen also testified at trial that the revolver belonged to Mayes). Although Mayes denied at trial that the methamphetamine and revolver were his, the jury obviously did not believe him. In light of this evidence, we conclude that Mayes' challenge to the jury's verdict is without merit.

## C.

Finally, we turn to Mayes' contention that the district court erred by enhancing his sentence under U.S.S.G. § 3C1.1 for obstruction of justice. Although at trial Mayes denied possession or ownership of the revolver and methamphetamine, he argues that his testimony does not rise to the level necessary to constitute obstruction of justice and that

---

[4]Mayes also challenges the admission of trial testimony concerning narcotics trafficking customs. Based on our review of the record, we are satisfied that the district court did not err in admitting this testimony. *See United States v. Hopkins*, 310 F.3d 145, 150-51 (4th Cir. 2002) (affirming admission of similar testimony), *cert. denied*, 537 U.S. 1238 (2003).

the district court did not specifically make the necessary findings to support the enhancement. We review the district court's application of the sentencing guidelines for clear error in factual matters and de novo for legal conclusions. *United States v. Quinn*, 359 F.3d 666, 679 (4th Cir. 2004).

Section 3C1.1 provides in pertinent part that a district court should increase a defendant's offense level by two points if the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the prosecution of the instant offense of conviction and the obstructive conduct related to the defendant's offense of conviction. "This enhancement applies to a defendant who commits perjury during the course of his or her prosecution, [and] . . . is appropriate if the sentencing court finds that 'the defendant when testifying under oath (1) gave false testimony; (2) concerning a material matter; (3) with the willful intent to deceive (rather than as a result of confusion, mistake, or faulty memory).'" *Quinn*, 359 F.3d at 681 (citation omitted).

We discern no error in the district court's ruling. The district court's finding that Mayes willfully and falsely testified at trial about ownership of the revolver and the methamphetamine is amply supported by the record, and this testimony — relating to the essential elements of the charges against him — clearly concerns a material matter. We note that although Mayes was intoxicated on the night of his arrest and testified at trial that he could not recall the events of that night, the trial testimony for which his sentence was enhanced (*i.e.*, his denial of ownership or possession of the revolver and methamphetamine) cannot reasonably be attributed to his intoxication (*i.e.*, "confusion, mistake, or faulty memory").[5]

---

[5]The district court commented at one point in its oral ruling that Mayes testified that he was "too drunk" to remember whether he made incriminating statements on the night of his arrest concerning the revolver and methamphetamine. (J.A. 246). However, the pertinent issue is not whether Mayes remembered making the incriminating statements but is, instead, whether his denial at trial of ownership of the contraband was willfully false and material.

### III

Based on the foregoing, we affirm Mayes' conviction and sentence.

*AFFIRMED*